### SPROULE & AGNEW v. McNULTY and others.

1 A. shipped a quantity of lead to B. with directions to sell the same and apply the proceeds to the payment of a debt, due from A. to B. The lead was insured by B. on his own account, on being advised by A. of the shipment. While in transitu the lead was attached by C. a creditor of A. The only question was, who was the owner of the lead at the time of the attachment? Held. That A. was the owner.

2 It seems that a consignment of property, with directions to the con-signee to sell the same and apply the proceeds to the payment of a debt due from the consignor to the consignee, is not different from an ordinary case of consignment of property to a factor, with directions to sell the same on account of the consignor. The title to the property remains in the consignor until it is disposed of by the consignee.

Appeal from the Circuit Court of St. Louis county.

*Opinion of the Court by Napton, Judge.*

This was an attachment by appellants against McNulty, Shaw & Mitchell, which was levied upon a cargo of lead. The appellees, Crawford & Carson, at the return term of the writ, filed their interpleader, claiming the property attached. On the trial of the interpleader, an agreed case was submitted, and the court found for the interpleaders

and gave judgment accordingly. From that judgment an appeal has been taken to this court. The agreed case is found on the record in the following words: "On the 11th July, 1840. the defendants shipped on board the steamboat Omega, 700 pigs of lead, weighing 49,000 lbs. to the interpleaders William Crawford, jr., and Th. J. Carson, at Baltimore, Maryland, for the express purpose of paying in part a note part due and unpaid, from defendants to interpleaders. The lead was assigned to Kennet, White & co., commission and forwarding merchants of St. Louis, with instructions accompanying it to forward the same to the interpleaders at Baltimore, through Hugh C. Hasson, their agent, a commission and forwarding merchant at New Orleans, Louisiana, as early as possible. Four bills of lading were executed for the lead between the defendants and the carriers, at the time of shipment; one of which was retained by the shippers, the defendants; another was forwarded to said Hugh C. Hasson; another was forwarded to Kennett, White & co., and another to the interpleaders, accompanied with a letter informing them of the shipment of the lead, and requesting them to receive the same, dispose of it for the interest of defendants, and apply the proceeds in liquidation of the aforesaid note due and unpaid. That accordingly the interpleaders immediately insured the lead on their own account. When the lead arrived in St. Louis, on its passage to Baltimore to the interpleaders, and came into the possession of Kennett, White & co., and before it was forwarded by them to interpleaders, as above directed, it was attached by the plaintiffs in this suit. The only question arising in this case is, who were the owners of the lead, at the time it was attached, the shippers, or the interpleaders? A great many authorities have been presented to the court, consisting of decisions made both in England and in this country. These decisions, and the opinions of learned jurists, have satisfied me, at least, that the *lex mercatoria*, is of a very plastic nature, adapting itself very much to the peculiar circumstances of each case. It appears impossible to draw any general rule of a binding and conclusive character, as applicable to the class of cases under which the present

MAY TERM.
1841.

Sproule & Agnew v. McNulty.

case might be included.  There is no settled and determinate test of ownership, either in England or this country.  To complete a contract of sale, there must be a delivery, either actual or implied.  A delivery to the carrier, where there has been an order for the goods, is undoubtedly a delivery to the consignee.  Where a debtor consigns property to his creditor, in payment of his debt, and there is any assent on the part of the creditor, a delivery to the carrier in this case, has also been held a delivery to the creditor.  So far the doctrine appears very reasonable.  But it has also been held, both in England and in some of our State tribunals, that if a debtor consigns property to his creditor, though the creditor be entirely ignorant of the fact, the delivery to the carrier is a delivery to the creditor, and his assent will be presumed.  This was, for the first time I believe, declared to be law by the judges in the case of Atkyn v. Barwick, (1 Strange, 165.)  The same doctrine was recognised by Lord Mansfield in the case of Anderson & others v. Temple, (4 Burr. R. 1768.)  In this case Lord Mansfield maintained the following doctrine: " The most desirable object in all judicial determinations, especially *mercantile* ones, (which ought to be determined upon natural justice and not upon the niceties of the law,) is to *do substantial justice*. And therefore I will avoid laying the stress that might properly be laid upon the assent being necessary to complete the contract, or the want of a delivery; the solid ground of which is, that a contract shall be presumed complete upon any distinction where the justice of the case requires it, though there is no *actual* delivery.  And it is settled, that if a man sends bills of exchange, or consigns a cargo, and the person to whom he sends them has paid the value before, though he did not know of the sending them at the time, the sending of them to the carrier will be sufficient to prevent the assignees from taking these goods back, in case of an intervening act of bankruptcy: but if goods or bills of exchange are sent, and the consideration has not been received, the court of chancery always interposes.  In the case in Strange, there is no doubt but the honesty of the case inclined the court to the judgment they gave, the *reason given*

turns upon a subtlety. I think the case was well supported upon other grounds than those mentioned in the book."

The case turned upon a question of fraud, but the other three judges, though concurring with Lord Mansfield in the disposition of the cause, agreed that an *assent* was necessary to *complete* every contract, that the act of bankruptcy occurring on the 8th November, and the defendant having never accepted until the 10th, the *contract* was incomplete, and upon the whole circumstance, pronounced the transaction fraudulent and void." The English authorities then, to establish the very broad proposition that the property vests in the consignee, who happens to be a creditor, upon delivery to the carrier, without any assent upon the part of the consignee, appear to rest entirely upon the decision in Strange, and upon the opinion of Lord Mansfield in Anderson v. Temple.

The case of Wood v. Roach, (2 Dall. 1 & 1,) is cited in support of the same doctrine. In that case the opinion of the court is very brief, but clearly assumes the position that when the bills of lading are signed, the property is gone from the consignor, and that fact was accordingly left to the jury. The rule is stated by the judge, delivering the opinion, *to be* founded on mercantile principles, and the inconvenience of the opposite doctrine. In the case of Summerville v. Elder, (1 Binney R. 106,) it was held, that if an agent, indebted to his principal, ship property to him on board a vessel belonging to a third person, and the captain signs a bill of lading deliverable to the principal, the property thereupon vests in the principal, and the agent cannot countermand or disturb the shipment.

This decision, however, may very well rest upon principles, other *than those* embraced in the previous cases, and is only applicable to the principle now under consideration, so far as it determines the effect of signing a bill of lading.

These are the only cases, which I have seen, that sustain the proposition in the unconditional manner I have mentioned.

In the case of D. & G. Ludlow, v. Bourne & Eddy, (1 Johns. R. 1,) the opinion of the supreme court of New York

6*

is given upon this question. Judge Thompson in that case says, " I do not think it necessary to controvert the general proposition, that when goods are shipped on account of, and consigned to a foreign merchant, the property shall *prima facia* be deemed vested in the consignee, subject to the right of stopping *in transitu* in case of insolvency. In such cases, probably, the master of the ship ought to be considered as the agent for the consignee, and the delivery to the former is a delivery to the latter; neither can it be denied, that where the consignment is for account of the consignor, the property remains vested in him, and he is deemed the legal owner. The consignment is always subject to be controlled and explained according to the understanding and evident intent of the parties."

The judge further observes : " A distinction is sometimes made between an actual delivery to the vendee himself, and a constructive delivery to some intermediate person. In the latter case, when the goods are at the risk of the vendee, it is equivalent to an actual delivery. Every legal contract may however be modified, according to the will of the contracting parties ; and when special, it is to that we must look in order to sustain their rights."

In the case of the Frances, 8 Cranch, 359, the supreme court of the United States held that an intention clearly proved of a consignor of goods, to vest the right of property in the consignee, is not sufficient to effect such a change of property, until the goods are received by the consignee, or some evidence is given of his agreement to take them on his own account, until that time the goods are at the risk of the shippers, and if they are enemies, the goods if captured are good prize.

The same principle was maintained in the opinion on Durham & Randolph's claim, contained in the same case. 8 Cranch, 354.

I infer from these cases, that to ascertain where and when the property vests, we must first look to the intention of the parties as evinced by their acts ; and secondly, inquire upon whom the risk falls.

In the case at bar, the defendants shipped to the inter-

MAY TERM, 1841.

Sproule & Agnew v. McNulty.

A. shipped a quantity of lead to B. with directions to sell the same and apply the proceeds to the payment of a debt due from A. to B. The lead was insured by B. on his own account, on being advised by A. of the shipment. While in transitu the lead was attached by C., a creditor of A. The only question was, who was the owner of the lead at the time of the attachment? Held: That A. was the owner.

pleaders, at Baltimore, a cargo of lead, and consigned the same to Kennett, White & co., of St. Louis, with directions to them to forward the same to the interpleaders, through their agent at New Orleans: one of the bills of lading was forwarded to the interpleaders, with instructions that the interpleaders should dispose of the cargo for the benefit of the defendants, and apply the proceeds in liquidation of a note given by defendants to interpleaders, and then due and unpaid.

What was the intention of the defendants in shipping this lead? Was the lead, when the bill of lading was signed, beyond their control; and if lost on the voyage from New Orleans to Baltimore, would the loss have fallen upon the interpleaders?

Assuredly not. Suppose the lead had even reached Baltimore, and the interpleaders had sold the same, upon the usual credit, and to persons of apparent solvency, and yet from unforeseen accidents, such as prudence could not well guard against, the proceeds were literally nothing; would the defendants have been absolved from their previous obligations? The interpleaders are directed to sell the *lead*, and appropriate the proceeds to satisfy their demand, and if no proceeds accrue, the instructions have been complied with, and the demand is still unsatisfied. It could not, I think, with any plausibility, be contended that the risk, if any, would have fallen upon the interpleaders. If such were the law, all our preconceived notions of the essential elements of a contract, must be false and unfounded. The idea, that when a debtor ships property directly to his creditor in payment of a debt, the law presumes the assent of a creditor, is obviously unfounded. The willingness of a creditor to receive his dues is reasonably enough presumed: but he may and would, where the debtor is not in failing circumstances, be very unwilling to receive a shipment of property at a distant port, with the risk of loss upon himself, or a discharge of the liabilities of the debtor. No such presumption is true in point of fact, however often it may have been decided to be so in law.

It is not very difficult to account for the decision in the

MAY TERM, 1841.

Sproule & Agnew v. McNulty.

"It seemsthat a consignm't of property, with directions to the consignee to sell the same and apply the proceeds to the payment of a debt due from the consignor to the consignee, is not different from an ordinary case of consignment of property to a factor, with directions to sell the same on account of the consignor. The title to the property remains in the consignor until it is disposed of by theconsignee-

case from Strange, and the cases determined in Pennsylvania. It seems to have been thought just, that as a debtor had a right to prefer *one* creditor to another, when he gave a clear indication of his wish to do so by a consignment of property, the courts should not interfere in behalf of another creditor for whom no such preference had been exhibited. Hence the courts, as between the assignees of the bankrupt and the preferred creditor, have strained a point, as I conceive, to give efficacy and validity to the intended transfer. Accordingly we find that Lord Mansfield declares the decision in Strange was right, but that the judges gave a wrong reason; and admits that the honesty of the case gave an inclination to the determination of the court. Notwithstanding the opinion of a few judges, I am constrained to believe that the weight of authority and reason favors a different view of the law. The interpleaders here, and the plaintiffs in the attachment, are both, I suppose, bona fide creditors of the defendants. Their equities are equal, and whoever gets possession first, must prevail. I am of opinion that no actual or constructive possession was in the interpleaders until their assent to receive the lead, and this assent, if granted to be proved by their insuring the property, was not shown to have taken place until after *the levy* of the attachment. The plaintiffs below then first obtained possession, and having an equal equity with the claimants in Baltimore, their attachment must hold.

The judgment of the circuit court is therefore reversed, and the case remanded.