MORRIS CENTER, et al., v. McQUESTEN AND WILLIAMS.

1. STATUTE OF FRAUDS; *Promise Made to Debtor.* A promise made to a debtor, for a valuable consideration, to pay his debt to a third person, is not a promise to answer for the debt of another person, within the statute of frauds, which applies only to promises made to a creditor; and such a promise made to the debtor need not be in writing.

2. GARNISHMENT; *Money in Hands of Agent.* Where a principal places money in the hands of his agent to pay a debt due from him to another person, and such other person at the time has no knowledge of the direc-

tion and acts of the principal, and the agent, while on his way to make the payment, is duly garnisheed at the instance of certain judgment-creditors of his principal, such money is liable to be applied under the proceedings of garnishment to satisfy the claims of the judgment-creditors.

3. ——— After such garnishment, the agent is not liable for said money to the person to whom he was directed by his principal to make the payment thereof.

## *Error from Franklin District Court.*

AN action was brought by *Wm. Williams* against *B. C. McQuesten,* to recover $506, alleged to belong to *Williams. Center* and two others were afterward joined as co-defendants. The district court, at the March Term 1874, gave judgment in favor of *Williams* and against *McQuesten* for the amount claimed, and adjudged that *Center* and the other defendants had no interest in said moneys. *Center* and the other two defendants appeal, and join *Williams* and *McQuesten* as defendants in error. All necessary facts are stated in the subjoined opinion.

*Benson & Parkinson,* and *Goodin & Stoughton,* for plaintiff in error—after quoting from the decision of the court below, "That a creditor may maintain an action against a party upon a special promise made by such party to the debtor to answer for the debt; that in an action on such promise, no one but the promisor can set up as a defense, that the promise was not in writing"—contended, that such statement is exactly the reverse of what the law is upon the subject; (§ 6, ch. 43, Gen. Stat. 505.) "No action shall be brought whereby to charge a person upon any special promise to answer for the debt of another person, unless the agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing, signed by the party to be charged therewith." And see, 5 Cush. 488; 5 Metc. 496; 98 Mass. 296; 31 Conn. 95; 43 N. H. 491; 24 Wend. 260; 108 Mass. 246; 1 Wis. 77; 12 Johns. 291. Again, the district court found that the consideration for the cattle was *paid* by Williams to Cowgill, and held that the

subsequent transactions made McQuesten the owner of the money in Williams' hands. Now, admitting that the money *was paid,* then the sum of $506 of *Cowgill's* money was placed in Williams' hands, and while so in his hands he was garnisheed, having *moneys in his hands* belonging to the principal debtor, Cowgill; and by virtue of their proceedings, plaintiff in error became entitled to the moneys. So whether we treat Williams as owing Cowgill, or as having funds in his hands belonging to Cowgill, in either case, the attachment-plaintiffs became entitled to the funds.

*John W. Deford,* for defendants in error, maintained that the judgment is supported by the facts found; that the conclusions of law, as explained by the facts, are not erroneous; ·36 Iowa, 616; 58 Mo. 589. The plaintiffs in error had shown no right to, or interest in, the fund in court, hence it did not lie in them to impeach the promise of Williams as void under the statute of frauds. But even if Williams had set it up, it would have done him no good, for it plays no part in this case. 36 Iowa, 616; 5 Wend. 235; 15 Kas. 236. The promise was not made to McQuesten, the creditor, but to Cowgill, the debtor. But that McQuesten *assented* to the promise of Williams to Cowgill, for his benefit, is to be presumed, until his dissent be shown; (58 Mo. 589;) his assent is clear from his bringing this suit to enforce the promise. Hence, if needed to sustain the judgment, this court will presume that McQuesten, before Williams was garnisheed, had seen him, and received his promise, assented to it, and released Cowgill, and whatever other fact, not found, if any, needful to an affirmance.

The opinion of the court was delivered by

HORTON, C. J.: From the findings of fact in this case, it appears that the defendant Williams bought of one H. E. Cowgill a number of cattle, for the sum of $1,749; that at the time the consideration was being paid, Cowgill requested Williams to retain $506 of the

Statement of facts.

money to pay to B. C. McQuesten on a note of that amount due to McQuesten from Cowgill, and Williams verbally promised Cowgill to pay McQuesten said sum. Shortly afterward, Morris Center, Henry Center, and Joshua Hodge severally recovered judgments against Cowgill before a justice of the peace, and caused proper proceedings to be instituted whereby the said sum of $506 was duly garnisheed in the hands of Williams as the money of Cowgill, and therefore liable to be appropriated to pay such judgments. After all these proceedings, McQuesten brought suit against Williams to recover the said $506; and to this action said plaintiffs in error were also made parties defendant. The court below held that McQuesten had the right to maintain his action on the special promise of Williams to Cowgill, and treating the money in Williams' hands as due to McQuesten, gave judgment in favor of McQuesten, and ordered the said $506 (which had been deposited in court) to be paid to McQuesten, thereby denying the claims of said plaintiffs in error to any part of said sum by virtue of their several judgments against Cowgill, and their garnishment of Williams. It does not appear from the record, that McQuesten had any knowledge of the promise of Williams to Cowgill prior to the garnishee proceedings, or that he was privy to the agreement.

The judgment of the court below was erroneous, but not on the principle contended for by the counsel for plaintiffs in error. It is urged by them, that the promise of Williams to Cowgill to pay the debt of Cowgill, was a special promise to answer for the debt of another person, and not being in writing, signed by the party to be charged, was within
1. Statute of
frauds.
the statute of frauds. (Sec. 6, ch. 43, Gen. Stat. 505.) The case is not within such statute. It is well settled, that a promise to a *debtor* (as in this case) to pay his debt to a third person, is not a promise to answer for the debt of another within the statute. The statute applies only to promises made to the *creditor*. (*Eastwood v. Kenyon*, 11 Ad. & El. 445; *Howard v. Coshow*, 33 Mo. 118; *Skelton v. Brewster*, 8

Johns. 376.) For a full discussion of this question, and for a citation of further authorities, see Throop on Verbal Agreements, chapters 11 and 13, vol. 1, 390, 453. Neither is it true that an action cannot be maintained upon a verbal promise made by a defendant, upon a valid consideration, to a third party for the benefit of a plaintiff, although the plaintiff was not privy to the consideration. *Anthony v. Herman,* 14 Kas. 494; *Harrison v. Simpson,* 17 Kas. 508.. But while it is true, that the promise to Cowgill by Williams is to be deemed made to McQuesten, if adopted by him, though he was not a, party, nor cognizant of it when made, yet such adoption to be effectual must have been made before the rights of other parties had intervened. McQuesten, by assenting to the promise or agreement of Williams, stands in no better position than if Cowgill had brought the suit. McQuesten is subject to all the equities that Cowgill would have been. After the proceedings had been instituted to divert the $506 to pay the judgments against Cowgill, McQuesten had no better right to recover the same, than Cowgill would had he been plaintiff in the court below instead of McQuesten.

The findings of fact virtually show that the relation of principal and agent was created between Cowgill and Williams. At the time the consideration of the $1,749 was paid for the cattle, $506 of the money was separated from the sum, 2. Garnishment; and Williams, under the direction of Cowgill, was agent, and principal. to deliver this to McQuesten. It was his duty to have so delivered the money, or to have returned it to Cowgill, unless prevented by legal proceedings. He was thus prevented. Prior to the payment, or delivery, the money was still the property of Cowgill, intended by him to be used to pay his note held by McQuesten. Before the money could be delivered to McQuesten, and while Williams was on his way to do so, the garnishment orders were served on him, and thereby the money in his hands (which he was to pay to McQuesten under the orders of Cowgill,) became liable to be appropriated to the satisfaction of the several judgments of

the plaintiffs in error. From the time of the garnishment, the money in Williams' hands, so belonging to Cowgill, was in fact in *custodia legis;* and after the money was deposited in the court, and all the parties making claim thereto were before the court asserting their respective interests, the court should have distributed the same in accordance with the respective rights of the plaintiffs in error under their judgments and the garnishee proceedings. McQuesten was not entitled to any portion of the fund in controversy, until the claims of the plaintiffs in error had been satisfied.

As the findings of the district court do not set forth the sums due on the respective judgments of the plaintiffs in error, we can only reverse the judgment of the court below, and remand the case for further proceedings in accordance with the views expressed in this opinion.

Judgment reversed.

All the Justices concurring.