# Coleman & Carroll *v.* Hatcher & Brannon.

# Coleman & Carroll *v.* Merchants' & Mechanics' Bank.

*Ancillary Garnishment ; Contest of Garnishee's Answer.*

1.  *Promise to one person, for benefit of another.*—When a person has in his hands money belonging to another, or owes him a debt previously contracted, a request by the creditor that he will pay the money, or any part of it, to a third person to whom he is indebted, or a written order to that effect, without any present valuable consideration, does not change the ownership of the debt or money, and will not support an action by such third person to recover it; but, where the purchaser of goods agrees, at the time of the sale, to pay the purchase-money by satisfying debts due from the vendor to third persons, the promise enures to the benefit of those third persons, is supported by a valuable consideration which takes the case out of the statute of frauds, and may be enforced by them by action in their own name; and a creditor of the vendor can not, by garnishment sued out before their acceptance of the promise, intercept the money as belonging to their debtor.

APPEALS from the Circuit Court of Pike.

Tried before the Hon. JOHN P. HUBBARD.

These two cases, presenting the same facts, and involving the same question, were argued and submitted together.  In each case, the action was commenced by summons and complaint, in favor of Hatcher & Brannon, and the Merchants' & Mechanics' Bank, respectively, against Tatum Brothers and R. J. Higgins; and in each case a garnishment was sued out against Coleman & Carroll, partners, as the debtors of said defendants, which was served on them on the 14th November, 1882.  The garnishees appeared, and filed an answer, which was contested by the plaintiffs; and an issue being thereupon made up between the parties, the following facts were agreed on, as recited in the bill of exceptions: "Plaintiffs' debt was against Tatum Brothers, and R. J. Higgins as indorsee.

[Coleman & Carroll v. Hatcher & Brannon.]

Tatum Brothers were merchants in Troy, having a large stock of goods; and they transferred and delivered the same to said Higgins, in payment of the amount due by them to him, and also to secure him against loss on his indorsements to plaintiffs and others. The amount so due by Tatum Brothers was greater than the value of the stock of goods. Within two or three days after such transfer, and on the 13th November, 1882, Higgins offered to sell the stock of goods to Carroll & Coleman, who stated to him that they had a large stock on hand, and also a stock which they had bought at a bankrupt sale; and as it was then late in the fall, and their notes were coming due, they could not, for these reasons, pay for the goods in cash, if they agreed to purchase. Higgins thereupon stated, that he owed H. M. Comer & Co., of Savannah, $1,000, and Comer was then in town; that he also owed about the same amount to Miss Freeman, which was not due, and about $1,300 to Joel Carter, which was not due; and that he would sell them the stock of goods, if they would arrange to pay H. M. Comer & Co., and also pay Miss Freeman and said Carter out of the purchase-money, when their debts were presented. It was thereupon agreed between them, that Coleman & Carroll should purchase the stock of goods at seventy cents on the dollar of the cost price and freight, and should pay said Comer & Co. out of the purchase-money, and also the debts to Freeman and Carter; and the sale was made upon these terms and conditions. An inventory was taken, and it was ascertained and agreed that the amount to be paid by Coleman & Carroll was $3,576.67. Out of this amount, Coleman & Carroll paid Comer & Co., by giving him their check for $1,000, which was done before the garnishment was served: The trade was made on Saturday, and the inventory completed on that day; and the garnishment was served on the following Monday, and the amount added up and ascertained later on that day. The debt to Miss Freeman was a note for $735, which became due on the 1st January, 1883; and the debt to Carter was a note for $1,319, which became due on the 1st October, 1883. Coleman & Carroll paid said notes after they became due, and after the garnishment was served. The garnishment was served before either Miss Freeman or Carter had any notice of the sale of the stock of goods, or of the arrangement to pay their claims, and before either of them had assented to the same, and before Coleman & Carroll had seen either of them, or promised them to pay their debts. The amount due by Coleman & Carroll, at the time the garnishment was served, was $2,596.67; and the amount due, after deducting the Freeman and Carter debts, is $522.67. At the time of the sale, said Higgins was indebted to Coleman &

[Coleman & Carroll v. Hatcher & Brannon.]

Carroll, by open account, in the sum of $188.32; and after deducting this sum from the amount due for the stock at the time the garnishment was served, the balance due by them would be $2,388.35, or $334.36 after deducting the Freeman and Carter debts. At the time of the sale of the goods to Coleman & Carroll, Higgins was in failing circumstances, though Coleman & Carroll had no notice of the fact; and they were perfectly good and solvent; which facts were known to Joel Carter."

This being all the evidence in the case, the court charged the jury, on the request of the plaintiffs, that they must find for the plaintiffs, if they believed the evidence. The garnishees excepted to this charge, and they here assign it as error.

P. O. HARPER, for the appellants.—The contract between Coleman & Carroll and Higgins was supported by a sufficient consideration, was valid and legal, and was fully executed before the service of the garnishment. By its terms, a present right of action vested in Carter and Freeman, their assent being presumed; and the subsequent service of the garnishment can neither affect their rights, nor impair the validity of the contract.—Drake on Attachments, 517; *Railroad Co. v. Wheeler*, 18 Md. 372; *Owen v. Estes*, 5 Mass. 330; *Lundie v. Bradford*, 26 Ala. 512; *Watkins v. Pope*, 38 Geo. 514; *Hitchcock v. Lukens*, 8 Porter, 303; *McKenzie v. Jackson*, 4 Ala. 230; *Neilson v. Blight*, 1 John. Cas. 205; *Hale v. Marston*, 17 Mass. 575; *Payne v. Mayor of Mobile*, 4 Ala. 333; *Lovely v. Caldwell*, 4 Ala. 684; *Weston v. Barker*, 12 Johns. 276; *Henry v. Murphy & Co.*, 54 Ala. 251; *Huckabee v. May*, 14 Ala. 263; *Bohannon v. Pope*, 42 Maine, 93; *Kinnard v. Thompson*, 12 Ala. 487; *Hoyt, Ford & Robinson v. Murphy*, 18 Ala. 316; *Lanier v. Driver*, 24 Ala. 249; *Lockwood v. Nelson*, 16 Ala. 294; *Halleck v. Bush*, 1 Amer. Dec. 60; *Skipwith v. Cunningham*, 8 Leigh, 271; *Morton v. Nayler*, 1 Hill, 538.

M. N. CARLISLE, and JOHN PEABODY, *contra.*—To defeat the garnishment, the assent of Carter and Freeman to the arrangement made between their debtor and Coleman & Carroll, before the service of the garnishment, was necessary.—*Baker v. Moody*, 1 Ala. 315; *Clark v. Cilley*, 36 Ala. 652; *Moseley v. Hildreth*, 22 Ala. 469; *Henry v. Murphy*, 54 Ala. 246; *Loan Asso. v. Weems*, 69 Ala. 584; Drake on Attachments, §§ 525–6; *People v. Johnson*, 14 Illinois, 342; *Center v. McQuesten*, 18 Kansas, 476; *Hearn v. Foster*, 21 Texas, 401; *Kelly v. Roberts*, 40 N. Y. 432; *Mayor v. National Bank*, 51 Geo. 325; *Redd v. Burns*, 58 Geo. 574; *Cushman v. Hayes*, 20

Pick. 132; *Woodbridge v. Perkins*, 3 Day, 364; *National Bank v. Bullock*, 120 Mass. 86; *Mansard v. Daly*, 114 Mass. 408; *Brown v. Foster*, 4 Cush. 214; *Botsford v. Simmons*, 32 Mich. 352; *Briggs v. Block*, 18 Mo. 281; *McCord v. Beatty*, 12 Iowa, 299; 7 Mo. 62.

STONE, C. J.—The undisputed facts of this case are, that Tatum Brothers sold to Higgins their stock of merchandise, in payment of a debt they owed him, and of liabilities for which he was their surety. No question is raised as to the fact and good faith of this sale. Higgins owed H. M. Comer & Co. one thousand dollars, owed Miss Freeman seven hundred and thirty-five dollars, to fall due January 1st, 1883, and owed Joel Carter thirteen hundred and nineteen dollars, to mature October 1, 1883. About November 13, 1882, Higgins sold said stock of merchandise to Coleman & Carroll, at a price which exceeded by some three hundred and thirty-four dollars the sum of the three debts above described, and a small debt due from him to Coleman & Carroll. The agreed terms of the sale were, that Coleman & Carroll were to pay Comer & Co. the debt due them, and were to pay Miss Freeman and Joel Carter the said debts due them when they severally matured, and were to set off and cancel the debt due them from Higgins. This left undisposed of by any agreement the *residuum* of three hundred and thirty-four dollars, an undisputed debt from Coleman & Carroll to Higgins. The debt to Comer & Co. was paid presently, and there is no controversy as to the rightfulness of that payment. Neither is any question raised as to the *bona fides* of the sale from Higgins to Coleman & Carroll. Before either Miss Freeman or Carter had notice of the arrangement, and before they had agreed, or could have agreed to look to Coleman & Carroll as their debtors, instead of Higgins, the garnishments in the present suits were served on Coleman & Carroll as the supposed debtors of said Higgins. The sole question in these cases is, who has the better right to the money, Carter and Miss Freeman, or the attaching creditors? And this question resolves itself into another: Did the agreement between Higgins and Coleman & Carroll vest in Carter and Miss Freeman the ownership, *pro tanto*, of the unpaid purchase-money of the merchandise? The Circuit Court decided this question in favor of the attaching creditors.

There is a clearly settled and well established line of adjudication, that when one has moneys in the hands of another, or that other owes him a debt previously contracted, a mere request preferred by the first to the depositary or debtor to pay the money, or any part of it, to a third person, without any present, valuable consideration therefor, does not change the

ownership of the money, nor give to such third person a right to sue and recover it. And the same rule obtains when, instead of a request preferred to the depositary or debtor, a written order, check or draft is given, but not accepted, requesting or directing such payments to the third person. Such request, until payment, and such order or draft, until acceptance or payment, are revocable at the option of the one who prefers the one, or gives the other. Many sound reasons uphold this rule, but we need not state them.—*Clark v. Cilley*, 36 Ala. 652 ; *Anderson v. Davis*, 31 Amer. Dec. 612 ; *Tudor v. Perkins*, 3 Day, 364 ; *Cushman v. Haynes*, 20 Pick. 132 ; *Brown v. Foster*, 4 Cush. 214 ; *Mansard v. Daly*, 114 Mass. 408 ; *Sproule v. McNulty*, 7 Mo. 62 ; *Briggs v. Block*, 18 Mo. 281 ; *Mayer v. Chat. National Bank*, 51 Ga. 325 ; *Center v. McQuesten*, 18 Kans. 476 ; *Williams, Deacon & Co. v. Jones*, at the present term ; *Kelly v. Roberts*, 40 N. Y. 432.

The rule, however, is different, when, as in this case, it is part and parcel of the contract of sale and delivery, that the purchase-price shall not be paid to the party making the sale, and from whom the consideration moves, but to a third person. In such case, there is a present-moving consideration of value, which takes the case without the influence of the statute of frauds; and it does not matter that the consideration moves from one, and the promise is made to another. Benefit to the promisor is, equally with detriment to the promisee, a sufficient consideration to uphold a promise.—*Dunbar v. Smith*, 66 Ala. 490 ; *Westmoreland v. Porter*, 75 Ala. 452 ; *Rutledge v. Townsend*, 38 Ala. 706. In *Young v. Hawkins*, 74 Ala. 370, Hawkins was indebted to Payne by promissory note for part purchase of lands. Hawkins then sold the lands to Young, and in part purchase Young agreed to pay the note which Hawkins owed Payne, and which had become the property of another. Young then sold the lands to Hood, who also promised in part purchase to pay the said Hawkins' note to Payne, unpaid in the first purchase. In this state of the case, and without paying the said note he had given to Payne, Hawkins filed a bill against Young and Hood, and sought to subject the lands to the unpaid obligation they had each incurred to pay the said Hawkins note given to Payne. The holder of that note was not made a party. We decided he could not recover, without first paying the Payne note. We said : "It can not be denied that, if Hawkins, after making the sale to Young, had extinguished the liability on the note Young had promised to pay, Young, and probably Hood, would have thereby become liable to pay the money to Hawkins, and he could then have maintained a bill against the two, and against the land. So, Mrs. Waters, or whoever may be the rightful

owner of Hawkins' unpaid purchase-money note, may maintain a bill against Young and Hood and the land, on the promises to pay that note given in the several purchases made of Hawkins' allotted interest in the land. But, to maintain a bill by Hawkins alone, on the state of facts first above supposed, it is necessary to aver the special facts which re-vest in Hawkins the right to demand and receive the money. This, because Young was not required to promise, and did not promise to pay the money to Hawkins. The consideration moved from Hawkins, and the promise was made to him ; but the promise was to pay the money to the holder of the note, and it was procured to be so made by Hawkins himself." The principle settled by this case is, that by having the promise made, as part of the contract, to pay the money to the holder of the note Hawkins gave in his purchase, he, Hawkins, disabled himself to assert ownership of the debt created in the Young purchase, unless he had either paid the original debt himself, or the holder of the note, being apprised of the arrangement, had repudiated it, and elected to look alone to Hawkins for payment.

In *Bohannon v. Pope*, 42 Me. 93, it was decided that, " Where, by simple contract, a party stipulates, for a valuable consideration, with another, to pay money, or do some beneficial act for a third person, the latter, if there be no objection other than a want of privity between the parties, may maintain an action for the breach of such engagement. But, if such third person elect, as he may do, to seek his remedy directly against the party with whom his contract primarily exists, there is an implied abandonment of the other remedy. The two remedies are not concurrent, but elective." In *Neilson v. Blight*, 1 Johns. Cas. 205, it was said : " Where a trust is created for the benefit of a person [it was to pay money in this case], though without his knowledge at the time, he may affirm the trust, and enforce its execution." In *Lawrence v. Fox*, 20 N. Y. 268, it was said : " An action lies on a promise made by defendant, upon valid consideration, to a third person, for the benefit of the plaintiff, although the plaintff was not privy to the consideration." And so, in *Watkins v. Pope*, 38 Ga. 514, the ruling was, that " When A sold to B a stock of merchandise, in consideration that B would pay a certain debt of five hundred dollars due by A, to which B was surety, and in further consideration that B would pay the debts due by A for the stock of goods, which amounted to fifteen hundred dollars, the mode of payment became a part of the consideration ; and even as to the fifteen hundred dollars, A had no right of action against B, until the latter failed, or delayed unreasonably, to pay the debts due by A for the stock of

[Doe, ex dem. Gosson v. Ladd.]

goods."— *Weston v. Barker*, 12 John. 267; *Morton v. Naylor,* 1 Hill, (N. Y.) 583; *Halleck v. Bush*, 2 Root, 26; *Merrills v. Swift*, 18 Conn. 257; *Hall v. Marston*, 17 Mass. 574; *Brewer v. Dyer*, 7 Cush. 337; *B. & O. R. R. Co. v. Wheeler*, 18 Md. 372; *Skipwith v. Cunningham*, 8 Leigh, 271; *Botsford v. Simmons*, 32 Mich. 352; *Werd v. Jewett*, 37 Amer. Dec. 115; *Stockard v. Stockard*, 46 Amer. Dec. 79; *Lady Superior v. McNamara*, 49 Amer. Dec. 184; *Tindall v. Touchbury*, *Ib.* 637.

The difference between the two classes of cases is, that in the one there is no present-moving valuable consideration to support the request, or promise; in the other there is.

The present case falls within the class second above considered, and the promise imposed on Coleman & Carroll a binding, primary obligation to pay to Carter and Miss Freeman their several demands, from the moment the promise was made, without any reference to any knowledge the latter may have had that the contract had been entered into. True, this relation of debtor and creditor would be changed, if Carter and Miss Freeman, on being notified of it, renounced the provision made for them; or, Coleman & Carroll failing to pay, if Higgins had himself paid these debts. Till one of these events happened, Coleman & Carroll were not debtors to Higgins, except for the excess over and above the sums they promised to pay Carter and Miss Freeman.

Reversed and remanded.