# Merchants' & Mechanics' Bank *v.* Coleman & Carroll.

*Ancillary  Garnishment ;  Contest of  Garnishee's  Answer.*

1. *Promise by garnishee to defendant, for benefit of third person ; subsequent payment with money borrowed, or furnished by defendant.*—Where the garnishee, having bought property from the defendant and debtor, assumed, as part of the agreed price, the payment of a debt due to a third person, the promise enured to the benefit of that person, and the defendant's right of action was suspended until his creditor repudiated the transaction.  If such third person, accepting the promise, afterwards received payment from the garnishees with money borrowed from a stranger, or the liability was settled by any transaction between them which discharged the original debtor, the garnishee is no longer liable to   the attaching creditor; but, if the debt was in fact paid with

money furnished by the original debtor, the liability of the garnishee is revived, and he is liable for the amount at the suit of the attaching creditor.

APPEAL from Circuit Court of Pike.
Tried before the Hon. JNO. P. HUBBARD.
The opinion states the facts.

M. N. CARLISLE, and JOHN PEABODY, for appellants.

P. O. HARPER, contra.

CLOPTON, J.-- The appellant instituted suit by summons and complaint against R. J. Higgins, and caused process of garnishment to be served on the appellees. The answer of the garnishees being contested, an issue was formed involving an inquiry as to the *amount* of their indebtedness to Higgins, a small indebtedness having been admitted in the answer. Coleman & Carroll purchased a stock of merchandise from Higgins, and by the terms of the contract promised to pay, as part of the consideration price, two notes held by Joel Carter and Miss Freeman, on which Higgins was surety for Tatum Bros. The controversy only extends to the question of indebtedness *vel non* to the amount of these notes. When this case was before us on a former appeal (77 Ala. 217), we held, that by the terms of the agreement between Higgins and the garnishees, the ownership, *pro tanto*, of the unpaid purchase money vested in Carter and Miss Freeman, subject to renunciation by them ; that a primary obligation was imposed on the garnishees to pay them their demands, without reference to their want of knowledge of the contract, or want of opportunity to renounce or accept the stipulation in their favor ; and that Higgins' right of action was thereby suspended. The agreed statement of facts, then shown by the record, recited that Coleman & Carroll paid the notes after they became due, and after the service of the garnishment, without stating the modes of payment. The record, as now presented, shows the manner in which the notes were paid, which, it is contended, is not in pursuance of the agreement, and that the effect is to constitute the garnishees debtors to Higgins, and to revive his right of action. The payment of the two notes having been made in different ways, and the legal effect being dependent on different principles, separate consideration is rendered necessary.

The note held by Carter was paid as follows : Suit being threatened against the garnishees, Coleman purchased in-

dividually real estate from Higgins, paying therefor his own money, and money borrowed. Subsequently he sold the real estate to Carter, receiving his note in part payment, and for its amount Coleman received credit in his account with the firm. The court refused to instruct the jury, as requested by plaintiffs, that if the note was in fact paid by Coleman individually, then the garnishees were not entitled to a credit for the amount so paid. By the contract of sale, Coleman & Carroll became primary debtors to Carter, on his electing to accept them as such, which he did by demanding payment, and threatening to commence suit against them if not paid. The right of Higgins, under the contract, was payment in such manner as would discharge the makers of the note from liability. If Carter accepted in payment property, whether individual or partnership, or the individual funds of one of the partners, who were jointly and severally bound for its payment, it operated to extinguish the demand as against both Higgins and Coleman & Carroll, and was such substantial performance of their promise, as would defeat any action which Higgins might bring against them, on the ground of a failure to pay the note. The fairness of the transaction is not assailed, but rather conceded by the instruction, and we have considered its effect on the assumption that it is *bona fide.* If otherwise, different rules would govern. The charge was properly refused.

The note held by Miss Freeman was paid with money delivered to the garnishees by Wood, who was a co-surety with Higgins, with a request that they would use it in paying the note, which they did. Coleman & Carroll were not informed at the time from whom the money came, and gave Wood credit for the amount. It is not shown that Wood was indebted to them, or wherefore, or on what account credit was given him for the money. In fact, the money was " furnished or loaned" by Higgins for the purpose of paying the note; if loaned, to whom does not appear. On this evidence the court, in the general charge, instructed the jury, that if a stranger had paid the note without any understanding or agreement with Coleman & Carroll, no liability would arise from them to such stranger; and if Higgins paid the note voluntarily, and not as agent or on account of Coleman & Carroll, he would occupy the same position as a stranger, and such voluntary payment would not make Coleman & Carroll his debtors. And, at the instance of the garnishees, the court further charged the jury: " If Coleman & Carroll paid the liability to Miss Freeman and Carter in pursuance of their promise to Higgins, when they bought the goods, they can not be made liable to

plaintiffs for the amount so paid, though Higgins gave them the money to do it with." The latter instruction contains hypothetic facts repugnant to each other. If Higgins furnished the money, though the payment was ostensibly made through Coleman & Carroll, the latter did not pay the note in pursuance of their agreement. But both instructions are based on a misapprehension of the relation of the parties to the original transaction, of the character and extent of the obligations of Coleman & Carroll created by their promise to pay the note, and of the rights of Higgins as being the person to whom the promise was made, and from whom the consideration moved. Coleman & Carroll purchased the stock of merchandise at an agreed and specified price, which they obligated themselves to pay. Payment of the note was a part of the price. Its payment by Higgins, who was liable therefor, operated to discharge the demand, so that the holder could maintain no action against the garnishees; and they would obtain the goods at a sum less than the agreed price by the amount of the note, unless thereupon they became indebted and liable to Higgins. Payment of the note by Higgins produces the same result, as if Miss Freeman had renounced the promise in her favor. As we have said, his right of action is, by the terms of the agreement, in abeyance, but is revived by the failure or unreasonable delay of the garnishees to pay the note, or by the election of the holder to look alone to her original debtors. The principle was so ruled in *Young v. Hawkins*, 74 Ala. 370, where it was held, that if Hawkins extinguished the liability on a note, which he owed, held by a third person, and which by the contract of sale, Young promised to pay as part of the purchase-money of the land, Young became liable to pay the money to Hawkins, who could maintain a bill to enforce a vendor's lien. And on the former appeal in the present case, after stating that the promise to Higgins imposes on the garnishees a primary obligation to pay to the holders of the notes their several demands, STONE, C. J., says: "True, this relation of debtor and creditor may be changed, if Carter and Miss Freeman, on being notified of it, renounced the provisions made for them; or Coleman & Carroll failing to pay, if Higgins had himself paid these debts." On the happening of either event, the garnishees became debtors to Higgins. Such is the effect, if he furnished the money with which the note was paid; and if it be said, that he loaned the money to Coleman & Carroll, then they were indebted to him for the amount so loaned at the time of making their answer to the garnishment. Whether, therefore, Higgins furnished the money

which was used in paying the note, the garnishees being the medium of payment, or loaned them the money, they are liable to pay it to him, and it is subject in their hands to plaintiffs demand.

The court also instructed the jury, that the garnishees were not liable, if Wood let them have the money, though by the arrangement they became liable to Wood or Higgins for its repayment. The defect in the charge consists in the proposition that it is immaterial whether the liability of the garnishees for the money furnished was to Wood or Higgins. If Higgins loaned the money to Wood, and he incurred a liability to repay it, and Wood afterwards loaned it to the garnishees, they binding themselves to pay or account to him, and not to Higgins, and the transaction is *bona fide*,— not a plan devised to avoid a direct and ostensible payment of the note by Higgins,—then the garnishees, having thus paid the note with money borrowed from a stranger to the contract of sale, are not liable. But if the money was really furnished by Higgins, Wood incurring no obligation to repay it, and being the mere conduit between Higgins and the garnishees, then the case falls within the rules we have stated as to the effect of a payment by Higgins, or of a loan of the money to the garnishees by him. If the garnishees are liable to Higgins for the money furnished, either by an express or implied promise, the plaintiff is entitled to recover the amount.

The proper application of these principles will suffice for a determination of the liability of the garnishees under the issue formed, in whatever aspect the evidence may present the case.

Reversed and remanded.