Bissell, J.,
delivered the opinion of the court.
This appeal presents a question which would be one of great difficulty but for the decisions of the supreme court, which to our mind practically resolve it. In 1887 Wilson was the owner of some property on the comer of Broadway and Colfax avenue. In February he leased the premises to *57 one Timerman for twenty-five years with the privilege of various renewals at the end of a term of five years. The rent reserved for the first five years was $100 a month and at the expiration of that subdivision of the term, and for every subsequent period of five years an appraisement and a valuation was to be had whereon the subsequent rent should be based. On the 29th of December, 1887, Timerman assigned this lease to the appellee, Lunt, by a written transfer in these terms :
“ Know all men hereby, that for and in consideration of the matters hereinafter mentioned and the sum of seven hundred and fifty dollars to me in hand paid by Horace G. Lunt of El Paso County, Colorado, the receipt whereof is hereby confessed, I do hereby assign, sell and transfer unto the said Horace G. Lunt the annexed lease and all my right, title and interest in and to the leased premises and do hereby grant, bargain, sell and convey unto him the said Horace G. Lunt all my right, title and interest in and to the said lots, pieces and parcels of land in the within lease mentioned, the said Horace G. Lunt in consideration hereof to pay the owner of said property the rent' reserved to be paid under and by virtue of said lease for and during the full term thereof, and to do and perform all things required to be done by me by the term of said lease, and to save and keep me harmless of and from any loss, liability or damage on account thereof.
“ Signed, sealed and delivered at Denver, Colorado, this 29th day of December, A. D. 1887.
“George W. Timerman. Seal.”
The general provisions, limitations, conditions and reservations in the lease are now unimportant, whatever may be their consequence and significance in subsequent stages of the litigation. On the 15th of June, 1888, the term was transferred by a naked assignment from Lunt to the tramway company and was assigned by it to its successor, and by the successor to the Denver Auditorium Company in January, 1892. All the assignments subsequent to the one made by Timerman were naked transfers without covenants or agree; *58 ments. On February 7,1892, the property was in possession of the auditorium company, between whom and Wilson there was an attempt to comply with the terms of the original demise. The complaint alleges that the rent was fixed by the agreement of these parties, the then holder and lessor for the ensuing five years at $600 a month. What may have been done by them, and whether they strictly and exactly complied with the terms of the lease whereby Lunt would be bound is probably sufficiently alleged, though since the judgment was entered on demurrer, the exact facts do not appear. Wilson brought an action against Lunt to recover the rent reserved. Lunt demurred and had judgment, and Wilson prosecutes this appeal.
The precedents generally predicate the right of the lessor to bring an action at law against the assignee of a term on the privity of estate which arises when the assignment is executed and the assignee enters. Following this principle to its legal conclusion, it is held that the assignee by a deed poll may avoid any liability for the rent by an assignment to another though the transfer be made to an irresponsible party and for the express purpose of freeing himself from the obligation. Nor has it always been held necessary for the assignee to show that he has been divested of the paper title, but it is enough that he was not in possession during the time for which the rent is claimed. Taylor’s Landlord and Tenant, §452.
This indicates that the gravamen of the suit is in reality the use and occupation, though the privity which is the legal result of the assignment must exist to sustain the action. This is because there is no contractual relation between the lessor and the assignee, and use alone has not usually been held enough to permit the lessor to sue. Just why it was not adjudged that a contract might be implied, from the use, and that this would allow the lessor to sue in assumpsit is not plain without a careful examination of the distinctions which existed at the common law and the forms of action which prevailed under that system. To the modern lawyer, except *59 as the profession is bound by precedent, which is undoubtedly a salutary principle in many ways, as it tends to the stability of the law, the reasons assigned in the cases which hold that there must be a privity of estate to maintain the action are a little unsatisfactory. In this case, however, we are not compelled to insist on its modification, hut we have indulged in the reflection in order to bring out more prominently the idea that in truth it is the use which gives the lessor the right to sue and not the privity in estate. The privity is only requisite because the parties did not contract, and formerly assumpsit could not be brought unless the parties sustained this relation. As we look at the pleading it is based on facts which avoid the necessity to apply the rule in all its strictness. It will be remembered that this was not a naked transfer by a deed poll without promises and assumptions, but was like the grant of an estate from A to B executed only by the grantor, hut containing an agreement to pay an incumbrance. It resembles many cases where the grant has been of an estate subject to an incumbrance where the grantee agreed to pay because as has already been recited, the transfer from Timer-man to Lunt was on the express consideration and the substantial agreement by Lunt to perform the conditions and covenants contained in the lease and to pay the rent reserved for the term. In this case, as in the former, the law would annex to the acceptance of the estate, the performance of the promise contained in the condition. We regard this circumstance as the controlling one in the present inquiry, and the present decision will turn entirely on our conclusions about it. The real inquiry is whether the agreement to pay expressed in the assignment fixes, enlarges, or modifies hunt’s liability. Of this, there would seem to be little doubt. We are Tree to admit that strong courts and able judges have apparently expressed the law otherwise and some of the very cases which will be cited in support of this opinion have been criticised, distinguished, and possibly practically overruled in the very jurisdictions where they were originally announced. But they have been cited, relied on, and followed by the *60 supreme court of this state, and are thereby rendered authoritative and binding on us. The true basis on which Lunt’s liability can be maintained is the principle so often announced in modern cases that where one makes a promise to pay another the debt which he owes, an action will lie by him for whose benefit the promise is made. It is only a question as to the application of the rule. The appellee strenuously insists and supports his contention by strong cases that the conveyance of an estate by the assignee which destroys the privity which has so many times been held indispensable to the maintenance of an action at law by the lessor against the transferee of the term, prevents the application of the doctrine. In this jurisdiction there seems to be no such limitation or exception. In fact a recent case in the supreme court, to which counsel made no reference, clearly negatives this idea. In principle it is like the case at bar, though it only concerns the grant of an estate, subject to a mortgage which the grantee assumed and agreed to pay. The very lucid and able opinion of Mr. Justice Goddard in the Starbird case presents a complete answer to the appellee’s contention. As the learned justice so felicitously puts it, “ there is a diversity of opinion among the courts of last resort in this country, growing out of the particular view that each tribunal has taken as to the ground of the liability of the grantee who assumes the payment of a mortgage upon the property conveyed to him; some holding that his liability depends on the equitable doctrine of subrogation, and that the obligation he assumes can be enforced only in an equitable proceeding; while others hold that it arises out of contract, and constitutes a legal liability, enforceable in an action at law. The latter is not only the better and more generally accepted view, but is the one that prevails in this jurisdiction.” The court makes a direct application of the principle under discussion to the case which is under consideration, and rests the liability of the grantee in a deed poll to pay an incumbrance on the promise expressed in the deed. Surely if the grantee may be sued at law by the mortgagee on the promise expressed when it was made only to the grantor, *61 there can be no objection on principle to a suit by the lessor against the assignee, even after transfer, and in the absence of the privity which might be essential where there was no' express promise. It has been so decided, and there are many cases which to our minds uphold this application of the doctrine. Lehow v. Simonton, 3 Colo. 346; Green et al. v. Morrison, 5 Colo. 18; Starbird et al. v. Cranston, 24 Colo. 20; Mulvany v. Gross, 1 Colo. Ct. of App. 112; Wood’s Landlord and Tenant, § 337; Wilsie on Mortgage Foreclosures, chap. XI.; Brewer v. Dyer, 7 Cush. 337; Carnegie et al. v. Morrison et al., 2 Metcalf, 381; Mellen v. Whipple, 1 Gray, 317; Arnold v. Lyman, 17 Mass. 400; Hall v. Marston, 17 Mass. 574; Center v. McQuesten, 18 Kan. 476; Johnson v. Knapp, 36 Ia. 616; Taylor v. De Bus et al., 31 Ohio St. 468; Frank v. Maguire, 42 Pa. St. 77; Lawrence v. Fox, 20 N. Y. 268; Fort v. Jackson, 17 Johnson, 238.
We therefore conclude as the case is presented on the-pleading, unless it should be modified by proof, that the plaintiff may recover. We reach this conclusion with less hesitation than is common in cases of first impression because should the plaintiff have judgment, the appellee can then obtain from the supreme court its construction of the decided cases.. We are not impressed with the position assumed by counsel for appellee, that a distinction must be drawn between cases where the promise is by parol as contradistinguished from one which would be termed a specialty. An action at law will lie in the latter case as well as in the former as was decided in the Starbird case, supra.
There remains but a single question to be considered, and that respects the striking out of the paragraph wherein the pleader states a due performance on his part of all the conditions in the lease and particularly of that which provides for the valuation of the property, and a resettlement of the rent on the expiration of the first five year period. If our first conclusions are correct the court undoubtedly erred in striking it out because under the terms of the assignee’s engagement he accepted the transfer subject to all the condi *62 tions and limitations contained in the original contract. The motion to strike out seems not to have been based on the way in which the performance was executed or the form of its statement in the pleading, but if either was imperfect or insufficient, the remedy was not by a motion to strike but by one to compel a more specific statement. The performance on the part of the lessor being sufficiently averred, he was entitled to offer proof on the subject, and showing due execution, his recovery would then be measured by the agreement as thus modified.
We are of the opinion the demurrer ought not to have been sustained, that the defendants should be compelled to answer and the case go to trial.
For the error committed in sustaining the demurrer, the judgment will be reversed and the case remanded for further proceedings in conformity to this opinion.

Reversed,